IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM MIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-18-716-R |
| | ) | |
| CAPITAL ONE BANK (USA), N.A., | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Before the Court is the Motion to Dismiss filed by Defendant Capital One Bank (USA), N.A. ("Capital One"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 18). Plaintiff responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

Under Rule 12(b)(6), the Court must "assess whether the plaintiff's complaint alone is sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)(quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). The Court must presume Plaintiff's factual allegations are true but need not accept conclusory allegations.

In his First Amended Complaint Plaintiff Might alleges:

10. Defendant placed collection calls to Plaintiff from phone numbers including, but not limited to (800) 955-6600.
11. Per its prior business practices, Defendant's calls were placed with an automated telephone dialing system ("auto-dialer").
12. Defendant placed collection calls to Plaintiff's cellular telephone with equipment that has the capacity to store or produce phone numbers using a

> random or sequential number generator and has the ability to call those numbers.
>
> 13. Sophisticated debt collectors, such as Defendant, require sophisticated phone systems that are capable of storing large amounts of phone numbers and data regarding each phone number, assuring that their employee debt collection agents are being fully utilized, managing the large numbers of debt collection calls made during each day, and keeping track of each call as well as the performance and outcome of each call for future collection purposes.

Doc. No. 16, ¶ 10-13. Plaintiff further alleges that on January 5, 2018, he spoke with a woman at 800-955-6600 and asked Defendant to cease contacting his cellular telephone.[1] Doc. No. 16, ¶ 17. Despite Plaintiff's request that no additional calls be placed to his cell phone, Plaintiff asserts that in total he received 213 calls, which were placed as many as four times per day, seven days a week. No voicemail messages were left for Plaintiff from the numbers he believes were associated with Capital One.

Defendant seeks dismissal of Plaintiff's Amended Complaint arguing that he fails to allege a cognizable claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., which prohibits use of an automatic telephone dialing system ("ATDS") or a prerecorded voice to place calls to a cellular telephone without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). Stating a claim under the TCPA requires that Plaintiff allege (1) that defendant called the plaintiff's cellular telephone; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without plaintiff's prior express consent. *See Asher v. Quicken Loans*, No. 2:17-cv-1203, 2019 WL 131854, *1 (D. Utah Jan. 8, 2019). Plaintiff does not allege that Defendant placed calls using an artificial or prerecorded voice, relying on Defendant's

---
[1] It is unclear whether Plaintiff dialed the number or answered an incoming call.

alleged use of an automatic telephone dialing system ("ATDS"). Defendant Capital One argues that Plaintiff fails to allege sufficient facts in support of his contention that Defendant used an ATDS, arguing in part that because the calls were collection telephone calls, they could not have been placed using at ATDS and that recent changes in the law impact Plaintiff's ability to proceed with this action. In essence, "[t]he parties' dispute can be reduced to the question whether a predictive dialing device that calls telephone numbers from a stored list of numbers−rather than having generated those numbers either randomly or sequentially−satisfies that statutory definition of ATDS." *Pinkus v. Sirius XM Radio, Inc.*, 319 F.Supp.3d 927, 937 (N.D. Ill. 2018). Defendant contends it does not, Plaintiff argues to the contrary.

The TCPA defines at ATDS as "equipment which has the capacity−(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Act gives the Federal Communications Commission ("FCC") the authority to promulgate implementing regulations. *Id.* § 227(b)(2). As is relevant here, in 2003, the FCC promulgated regulations to define an ATDS to include "predictive dialers," that is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (2003) Order"), 68 Fed. Reg. 44144, 44161 (July 25, 2003)(footnote omitted). The Order indicated that the term "ATDS" included numbers randomly generated and calls based on a given set of numbers. *Id.* at 44161. ("[T]o exclude from these restrictions equipment that use predictive dialing software from the definition

of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result."). *Id.*

In 2008, the FCC affirmed the 2003 Order via Declaratory Ruling. *See In re Rules & Regulations Implementing Telephone Consumer Prot. Act of 1991*, 73 Fed. Reg. 6041 Feb. 1, 2008). ("In this document the Commission addresses a Petition for Expediated Clarification and Declaratory Ruling filed by ACA International (ACA).") Therein the Commission reiterated "that the plain language of § 227(b)(1)(A)(iii) of the Communications Act prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the party called." *Id.* at 6042. The Commission noted its prior determination that a predictive dialer, used to call specific numbers from established customers, meets the definition of autodialer. *Id.*

In 2015, the Commission issued another Declaratory Ruling, affirming its prior statement that "dialing equipment generally has the capacity to store or produce, and dial, random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." FCC 15-72 at 11-12. The Commission reiterated that predictive dialers are also autodialers. *Id.* The Commission's interpretation was challenged in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), the results of which impact this Court's decision on the instant motion, although the exact impact is subject to much debate, which need not be decided at this stage of the litigation.

In *ACA*, the court invalidated the Declaratory Ruling's interpretation of the term ATDS, explaining that the FCC's 2015 description of an autodialer contradicted its prior

4

rulings. The court explained either interpretation of the statute may be correct, but not both at the same time:

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

*Id.* at 702–03. Defendant contends that, because the 2015 ruling reiterated the Commission's prior rulings including the 2008 and 2003 pronouncements, each of those interpretations was similarly invalidated by the court's decision in *ACA*. The *ACA* court's ruling was twofold. First, that the Commission's interpretation of "capacity" was overly broad, because it relied not on present capabilities, but on features that could be added through software changes and updates. *Thompson-Harbach v. USAA Federal Savings Bank*, No. 15-cv-2098-CJW-KEM, 2019 WL 148711, *8 (N.D. Iowa Jan. 9, 2019).

> The D.C. Circuit rejected the FCC's interpretation of the functions that equipment must have to qualify as an ATDS. Specifically, *ACA International* overturned the FCC's 2015 Declaratory Ruling "reaffirming . . . the notion that a device can be considered an autodialer even if it has no capacity itself to generate random or sequential numbers (and instead can only dial from an externally supplied set of numbers." *Id.* at 702; *see Declaratory Ruling*, 30 FCC Rcd. At 7971-72. . . . The court overruled the FCC's 2015 Declaratory Ruling because of what the court viewed to be fatal inconsistencies in the FCC's reasoning.

*Id.* at * 9. Defendant's argument in support of dismissal is premised on the 2018 *ACA* decision, it argues that because the court overruled the 2015 Declaratory Ruling, a device cannot be an autodialer where, as is apparent here, the numbers were provided to the system, not generated randomly or sequentially.

5

The Court finds, at this juncture, and as a matter of law, that it cannot say that Plaintiff's claims are not plausible with regard to the capacity for any dialing system utilized by Defendant to contact Plaintiff. In addressing the federal circuit's *ACA* decision the Second Circuit held:

> We view the D.C. Circuit's discussion as correctly drawing a distinction between a device that currently has features that enable it to perform the functions of an autodialer—whether or not those features are actually in use during the offending call—and a device that can perform those functions only if additional features are added. We find that distinction persuasive; accordingly, we would conclude that the former category of devices falls within the definition of an ATDS, and the latter does not.

*King v. Time Warner Cable Inc.*, 894 F.3d 473, 479 (2d Cir. 2018)(footnote and citations omitted). Accordingly, the issue is whether the calls about which Plaintiff complains were the product of a machine that was capable at that time of generating random and sequential numbers, not whether the call to him was the result of such. Furthermore, the Court finds that Plaintiff's allegations, although not detailed, are sufficient to avoid dismissal, given that the relevant information to support his contention lies exclusively in the hands of the Defendant.

Cases addressing motions to dismiss TCPA claims in the short time since *ACA* was decided have varied in their outcomes.[2] The undersigned concurs with those courts that have found sufficient factual allegations where a Plaintiff pleads a large number of calls or some other indicia of an ATDS and that the defendant used an ATDS without more.

---

[2] Many of the cases upon which Defendant relies were motions for summary judgment. Although such cases may be instructive regarding the elements of a TCPA claim or the interpretation of the statute, they are of relatively little assistance in assessing whether Plaintiff has met the burden of pleading his case under the Federal Rules of Civil Procedure and relevant Supreme Court precedent.

> Plaintiff alleges that Ocwen called her using an autodialer, and that Plaintiff know this "because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line from Defendant." (Doc. 1, ¶ 19). Plaintiff alleges that Defendant called her using an ATDS which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (including *but not limited to* predictive dialer). . . This is sufficient at this stage.

*Whitehead v Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 WL 5279155, *4 (M.D. Fla. Oct. 24, 2018).

> [T]he Court concludes that Plaintiff's Complaint includes sufficient allegations that support his claim that the calls were autodialed and/or prerecorded. Plaintiff alleges that Defendant made upwards of 310 calls to Plaintiff's cellular telephone. ¶ 30. Plaintiff also alleges that Defendant ignored Plaintiff's numerous demands that Defendant cease calling, which also suggest that Defendant was autodialing Plaintiff. ¶ 26.

*Adams v. Ocwen Loan Servicing, LLC,* No. 18-81028-cv-DIMTROULEAS, 2018 WL 6488062, *4 (S.D. Fla. Oct. 29, 2018).

> TCPA defines an ATDS as "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator; and ... to dial such numbers." § 227(a)(1) (emphasis added). Thus, the TCPA may be violated when an unconsented call is made with equipment that possesses the capacity to generate and dial random or sequential numbers, regardless of whether the call was the result of random number generation. *See ACA Int'l*, 885 F.3d at 704 (noting that under current FCC interpretations, "the statute prohibits any calls made from a device with the capacity to function as an autodialer, regardless of whether autodialer features are used to make a call").
>
> The court can conceive of no other facts reasonably available to Mr. Asher that would enhance his allegations that he received unconsented calls that bore indicia of an automated dialer. Without discovery, Mr. Asher has no way to learn whether the automated system that called him has the capacity to generate random or sequential numbers. But Mr. Asher has alleged that he received unconsented calls that are indicative of such equipment, and in the absence of a more plausible explanation for the genesis of those calls, the court finds such allegations sufficient. If the presence of specific facts to establish the technical specifications of an ATDS were an

7

absolute requirement at the pleading stage, then, so long as offenders sufficiently shielded the precise capabilities of their equipment from the general public, the TCPA could be violated with impunity. To the extent that Quicken Loans intended to argue that Mr. Asher must assert formulaic allegations that "upon information and belief, the equipment used to place the calls had the capacity to generate random or sequential numbers," the court cannot agree; Mr. Asher's amended complaint expressly alleges that the calls were made using an ATDS "as that term is defined in 47 U.S.C. § 227(a)(1)." Am. Compl. at 2.

*Asher v. Quicken Loans, Inc.*, No. 2:17-CV-1203, 2019 WL 131854, at *3 (D. Utah Jan. 8, 2019); *but see Pinkus v. Sirius XM Radio, Inc.,* 319 F.Supp.3d 927, 937 (N.D. Ill. 2018)(granting motion for judgment on the pleadings in favor of the defendant).

The issue raised by Defendant is best adjudicated at the summary judgment stage. Plaintiff has pled sufficient facts to avoid dismissal, and accordingly, the Motion to Dismiss is DENIED.

IT IS SO ORDERED this 11th day of February 2019.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE